UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CLARENCE BOGAN, III,   Case No. 1:11-cv-259

    Plaintiff,   Barrett, J.
                                  Bowman, M.J.

vs.

TIMOTHY BRUNSMAN, et al.,

    Defendants.

## REPORT AND RECOMMENDATION

Plaintiff, an inmate at the Lebanon Correctional Institution (LeCI) in Lebanon, Ohio, brings this action against LeCI Warden Timothy Brunsman and the Director of the Ohio Department of Rehabilitation and Correction Gary C. Mohr. Plaintiff's *pro se* complaint alleges numerous violations of his rights as a result of his incarceration at LeCI. This matter is before the Court on Defendants' motion for summary judgment (Doc. 33) and the parties' responsive memoranda (Docs. 39, 40, 41[1]).

### I. Background and Facts

On February 27, 2012, Plaintiff's complaint, with the exception of Claim 4, was dismissed with prejudice for lack of prosecution. (Doc. 28). In Claim 4 of his complaint, Plaintiff alleges that he has been housed in isolation "C-block" awaiting transfer to a protective control unit at another prison. Plaintiff states he was granted protective control status in November 2010. He alleges no precautions have been taken for his safety, and

---

[1]Document 41 is captioned as Plaintiff's response to "Defendants' Reply to Plaintiff's Motion in Opposition of Defendants' Motion for Summary Judgment." Defendants' moved to strike that document based on Plaintiff's failure to seek leave of Court prior to its filing. (Doc. 42). Defendants' motion was denied. (Doc. 44).

that he is forced to cell, shower and recreate with general population inmates, many of whom are known gang members who have threatened his safety.

In support of their motion for summary judgment, Defendants have submitted the affidavits of Timothy Brunsman, the Warden at Lebanon Correctional Institution (LeCI) (Doc. 33, Ex. 2) and William Eleby, an employee of ODRC Bureau of Classification and Reception.[2] (Doc. 33, Ex. 3). Defendants' affidavits set for the following facts:

At the time of the filing Defendant's motion for summary judgment Plaintiff was an inmate in protective control at the Allen Oakwood Correctional Institution in Lima, Ohio. (Doc. 33, Ex. A) . He was transferred from the Lebanon Correctional Institution on February 17, 2012, where he had been housed since November 22, 2010. (Brunsman Aff. ¶ 3; Elby Aff. ¶ 5).

While at LeCI, Plaintiff made allegations that his life was being threatened by the Aryan Brotherhood. Although there was not a cognizable threat against Plaintiff, officials at LeCI determined that he would be transferred to the protective control unit at the Allen Oakwood Correctional Institution. Prior to his transfer to Oakwood, the Bureau of Classification and Reception received numerous letters from Plaintiff inquiring as to the status of and time frame for his transfer to the Allen Oakwood Correctional Institution. Plaintiff requested a transfer to protective control at Oakwood or any facility in the northern part of the state so that he could be closer to his family. He referenced that he had some sick family members and that they could not make the long trip from the Cleveland area to

---

[2] The Bureau of Classification and Reception makes the determination as to the security level assigned an inmate as well as where the inmates will be housed while in the care, custody and control of the Department of Rehabilitation and Correction.

Lebanon.  Plaintiff also requested a reduction in his security classification so that he did not have to be with level 3 inmates.

According to Defendants, Plaintiff was placed in segregation while at LeCI until bed space opened up at the protective control unit at Oakwood in an effort to take precautions for his safety.  The Bureau of Classification and Reception's office wrote letters to Plaintiff on March 2, 2011, June 6, 2011, September 14, 2011, January 12, 2012, February 2, 2012, and on February 8, 2012 in response to his inquiries about his transfer, in which he was advised that he had been approved for protective control at Oakwood and would be transferred when bed space was available.

Defendants further contend that Plaintiff did not assert that he was assaulted or injured by another inmate while at the Lebanon Correctional Institution and made general but unsubstantiated statements that he was in danger.  Defendants maintain that Plaintiff's file indicates that he did not seek medical treatment for the allegations or incidents he now references.  (Doc. 33, Ex. B, Brunsman Aff. ¶ 7).  Warden Brunsman asserts that  received numerous kites and ICR's from Plaintiff referencing only his complaints about the transfer process and alleged damage to his personal property.  (Doc. 33, Ex. B, Brunsman Aff.¶ 8)

Plaintiff's response in opposition to Defendants' motion for summary judgment disputes many the facts contained in Defendants' motion.  (Doc. 39).  Plaintiff attaches copies of letters, medical request forms and kites detailing his complaints and Defendants' responsive correspondence.  Notably, on December 15, 2010,  Joanna Saul, the Director of the Correction Institutional Inspection Committee (CIIC), wrote a letter to Plaintiff informing him that the Protective Control Committee recommended that he be approved for PC placement and that such recommendation was forwarded to the Warden.  The letter

further informed Plaintiff that if he faces a specific threat from his "cellie" to communicate such threat with his unit staff so they may take appropriate action.  (Doc. 39, Ex. 1 at 14-15).

Thereafter, on December 22, 2010, Plaintiff submitted a Health Services Request stating:

> I have been beat on by several celly and have great pain in my sides!  Plus blood in my stool! Also, a big guy tried to have sex with me in the shower, when I refused he jacked on me and it got on me! The he pissed on me! He knocked me down too!  I want an AIDS test!

(Doc. 39, Ex. 1 at 18).

Plaintiff also submitted an Informal Complaint Resolution form to Defendant Brunsman on December 2010, stating, *in toto*:

> Sir I was approved (by you) for p/c on 12/13/10
> (1) Have you sent that paperwork to Mr. Eleby yet?
> (2) Have you received a decision from Mr. Eleby yet?

(Doc. 39, Ex. 1 at 21).

On December 29, 2010, Ms. Saul, sent another letter to Plaintiff in response to his correspondence.  (Doc. 39, Ex. 1 at 22.).  Ms. Saul notes that Plaintiff's "letter relayed several serious allegations regarding personal safety concerns, inadequate medical treatment, lack of staff response to kites, inappropriate staff conduct, and facility conditions."  *Id.*  Ms. Saul informed Plaintiff that the CIIC does not have any authority to investigate such complaints, and advises Plaintiff to use the inmate grievance procedure, regarding medical, facility condition, and inappropriate staff allegation.  *Id.*

Thereafter, on April 8, 2011, Plaintiff submitted a kite[3] and an Informal Complaint Resolution (ICR) to Defendant Brunsman, wherein he complains about being forced to shower and recreate with the general population. Plaintiff further complains that members of the Aryan Brotherhood have been serving his meals, spitting in his food and causing him to become ill. (Doc. 39, Ex. 1 at 31-32). Plaintiff also complains that the prison is infested with roaches and rats. *Id.* at 32. Plaintiff also complains that his transfer is taking to long. *Id*. In response to Plaintiff's complaint, an LeCI official[4] advised Plaintiff to inform the nurse of his medical issues and sign up for nurse/doctor sick call. *Id*. Plaintiff was further informed that the Major in charge of the showering schedule will be notified of Plaintiff's concern. Plaintiff was also informed that an exterminator is on contract to treat the facilty. Finally, Plaintiff was informed that "when the Bureau of Classification informs LeCI to transfer you, you will be transferred." *Id*.

Plaintiff submitted another ICR to Defendant Brunsman on May 13, 2011, wherein he complains about the conditions of the prison building, the scheduling of showers during mealtime, being denied access to his personal property ,and again complains about the untimeliness of his transfer. (Doc. 39, Ex. 1 at 38). LeCI staff responded to Plaintiff's ICR on May 16, 2011. (Doc. 39, Ex. 1 at 39). Plaintiff was informed to report his concerns about the conditions of the facility with the block manager. Plaintiff was further informed that LeCI has conducted an investigation relating to his request to be placed in protective custody and Plaintiff has been recommended for PC. *Id.*

---

[3] Kites are used only for communication between inmates and staff and not for any other purpose. (Doc. 39, Ex. 1 at 30).

[4] The Court is unable to discern the signature of the LeCI staff member who completed the ICR response. (Doc. 39, Ex. 1 at 39)

On June 17, 2011, Plaintiff submitted a Notification of Grievance wherein he again complains about being forced to exercise and shower with general population inmates. (Doc. 39, Ex. 1 at 41). He asks that Defendant Brunsman be removed from his position. He also complains about access to legal paperwork. *Id.*

The Chief Inspectior issued a Decision on Plaintiff's Grievance on November 9, 2011, which states in relevant part:

> With respect to your complaint regarding showers and recreation in segregation, I find that Administrative Rule 5120-9-31 inmate Grievance Procedure, states in part that:
>
> Within fourteen calendar days of the event giving rise to the complaint, the inmate shall file an informal complaint to the direct supervisor or staff member, or department most directly responsible for the particular subject matter of the complaint.
>
> I find that this is an issue that you have to properly and fully pursue through the Inmate Grievance Procedure on the institutional level starting at the informal complaint stage. Accordingly, your informal complaint should have been submitted to the Deputy Warden of Operations, as he or she oversees segregation staff at LECI. If you were not satisfied with the response that you received from the Deputy Warden of Operations, you would have been free to further properly pursue this issue through the Inmate Grievance Procedure by filing a grievance with the Inspector of Institutional Services.
>
> I find that Administrative Rule 5120-9-31, Inmate Grievance Procedure, states in part that grievances in which the Warden or Inspector of Institutional Services has been made a party must show that the Warden or Inspector of Institutional Services was personally and knowingly involved in a violation of law, rule or policy and approved it or did nothing to prevent it. You have failed to clearly indicate how Warden Brunsman was personally and knowingly involved in a violation of law, rule or policy and approved it and did nothing to prevent it.
>
> Accordingly, this grievance is DENIED. This office will take no further action on this matter at this time.

(Doc. 39, Ex. 1 at 44).

The documents submitted by Plaintiff also include a December 30, 2011 Decision of the Chief Inspector on a Grievance. (Doc. 39, Ex. 1 at 57). The decision was issued in response to a Grievance Plaintiff filed against Defendant Brunsman on November 7, 2011, wherein Plaintiff complained about being housed with the general population despite being in protective custody status. The decision state in relevant part:

> Upon my review of the grievance log at LECI. I find that you submitted an informal grievance to Warden Brunsman regarding this issue on 11/7/2011. I find that Warden Brunsman responded to your informal complaint informing you that you have been moved to a single cell.
>
> Administrative Rule 5120-9-31, Inmate Grievance Procedure, states in part that grievances in which the Warden or Inspector of Institutional Services has been made a party must show that the Warden or Inspector of Institutional Services was personally and knowingly involved in a violation of law, rule or policy and approved it or did nothing to prevent it. You have failed to clearly indicate how Warden Brunsman was personally and knowingly involved in a violation of law, rule or policy and approved it and did nothing to prevent it.
>
> Accordingly, this grievance is DENIED. This office will take no further action on this matter at this time.

*Id.*

In light of the foregoing, Plaintiff maintains that Defendants' motion for summary judgment should be denied because the record shows Defendants lack of interest in Plaintiff's safety.

Upon careful review of the pleadings, affidavits and supporting attachments, the undersigned finds that Defendant's motion is well-taken.

**II. Analysis**

**A. Standard of Review**

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, inferences are not to be drawn out of thin air. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"*Matsushita,* 475 U.S. at 587(citation omitted).

**B. Defendants are entitled to judgment as a matter of law with respect to Claim 4 of Plaintiff's complaint.**

*I. Deliberate indifference*

To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of state law. *Sigley v. City of Parma Hts.*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Here, Plaintiff's surviving claim alleges that while at LeCI, he was forced to cell, shower and recreate with the general population, many of whom are known gang members, although he was granted protective control status in November 2010. Thus, Plaintiff claims that Defendants failed to protect him in violation of the Eighth Amendment's prohibition against "cruel and unusual punishments." U.S. Const. amend. VIII; *see Farmer v. Brennan*,

9

511 U.S. 825 (1994) ("Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.").

A prison official may be held liable under the Eighth and Fourteenth Amendments for acting with "deliberate indifference" to an inmate's safety if he knows that the inmate faces a substantial risk of serious harm and yet disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). *See also Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir.2004). The Supreme Court set out two requirements for liability in this situation: (1) "the deprivation alleged must be, objectively, 'sufficiently serious' . . . . The inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm; and (2) "a [jail] official must have a . . . . state of mind . . . of 'deliberate indifference' to inmate health or safety." *Id.*

Deliberate indifference exists only if a jail official knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. This means "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Thus, a prisoner can show a violation of the Eighth Amendment if he proves both an objective and subjective component of a "failure to protect" claim.

First, under the objective component of the claim, the plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id.*, 511 U.S. at 834. In order to prove the objective element of his claim, Plaintiff must do more than allege a generalized concern for his safety and welfare. Thus, identification of a prisoner's enemies is critical to the prison's ability to protect a prisoner because it is the prison

officials, not the prisoner, who must determine whether there is a substantial risk of harm that warrants a transfer or other action.  See *Gant v. Campbell*, 4 F. App'x at , 256 (6th Cir.2001) (finding no Eighth Amendment violation for failure to protect where the plaintiff expressed a general concern about his safety but did not identify any particular gang members whom he feared).  Here, although Plaintiff expressed general concern for his safety while allegedly showering and exercising with the general population and known gang members; his medical request forms and kites and ICR's to Defendant Brunsman did not identify any particular gang members whom he feared, or identify any specific threats made by general population inmates.[5]  However, Plaintiff did report an assault in the shower but did not identify his attacker.  To address his concern, Plaintiff placed under protective control status and granted a single-man cell.

Second, under the subjective component, the court examines the defendant's state of mind to determine whether he acted with "deliberate indifference" equivalent to an intent to punish inmate health or safety.  *Id.; see also Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988).  To establish the subjective component, a plaintiff must show that the defendants had knowledge of and disregarded an excessive risk to his safety.  *Id.* at 837.  For similar reasons, Plaintiff's allegations fall short of showing the subjective element of his claim.  Defendants argue that there are no records to support Plaintiff claims of assault, nor was there any time of cognizable threat of harm to Plaintiff; in any event, they also maintain

---

[5] Defendant Brunsman's affidavit states that he "did not receive any communication from Inmate Bogan, nor was I made award of any of the assaults or incidents described in Claim 4 of the Complaint." (Doc. 32, Brunsman Aff., ¶ 6).  However, as outlined above, Plaintiff did submit kites and ICR's to Defendnat Brunsman complaining about being forced to shower and exercise with the general population and his resulting safety concerns.  Such a discrepancy by Defendant Brunsman is concerning to the Court.  Nonetheless, as outlined below, Defendants' remain entitled to judgment as a matter of law.

they reasonably responded to Plaintiff's complaints. As noted above, Defendants placed Plaintiff in segregation pending a transfer to protective control at the Oakwood facility. The records submitted by Plaintiff indicate that Defendants did not ignore Plaintiff's numerous complaints and officials at LeCI adequately responded to Plaintiff's concerns. (Doc. 39).

In the case before this Court it is beyond dispute that the prison officials acted reasonably with respect to those risks of which they were reasonably aware. Accordingly, Plaintiff has failed to establish either the objective or subjective elements of his failure to protect claim and thus, has failed to show a violation of his constitutional rights. As such, Defendants are entitled to judgment as a matter of law with respect to Claim 4 of Plaintiff's complaint.

### II. Qualified Immunity

To the extent that the Plaintiff is suing the Defendants in their individual capacities, they assert that they are entitled to qualified immunity. The undersigned agrees, and finds that Defendants are entitled to qualified immunity because Plaintiff has not shown either a constitutional violation nor that Defendants actions were "objectively unreasonable" in light of clearly established law. *See Dickerson v. McClellan*, 101 F.3d 1151, 1157-1158 (6th Cir. 1996); *see also McCloud v. Testa*, 97 F.3d 1536, 1542 (6th Cir. 1996) (finding that the burden of disproving qualified immunity rests with the plaintiff)*.*

### III. Conclusion

**IT IS THEREFORE RECOMMENDED THAT** Defendants' motion for summary judgment (Doc. 33) be **GRANTED**; all pending motions (Docs. 45, 48, 52) be **DENIED as MOOT** and this matter **TERMINATED** on the active docket of the Court. The Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Court Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

                                                  s/Stephanie K. Bowman
                                                  Stephanie K. Bowman
                                                  United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CLARENCE BOGAN, III,

    Plaintiff,

vs.

TIMOTHY BRUNSMAN, et al.,

    Defendants.

Case No. 1:11-cv-259

Barrett, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).